STATE, RESPONDENT, *v.* McKINNEY, APPELLANT.

(No. 2,004.)

(Submitted January 6, 1904.   Decided January 23, 1904.)

| 29 | 375 |
|----|-----|
| 29 | 546 |
| 29 | 375 |
| 34 | 84 |
| 34 | 85 |
| 34 | 333 |
| 29 | 375 |
| 36 | 142 |
| 29 | 375 |
| 37 | 80 |
| 29 | 375 |
| 39 | 68 |
| 39 | 108 |

*Meat and Milk—Inspection—License—Constitutional Law—Statute—Title. — Classification—Police Powers—Taxation.*

1. The purpose of Section 23, Article V, of the Constitution is to guard against fraud in legislation, and against false and deceptive titles to proposed Acts.

2. While all the provisions of the Constitution are "mandatory and prohibitory" (Article III, Section 29), yet the courts will give this section a liberal construction, so as to not interfere with or impede proper legislative functions.

3. The legislature is the judge, to a great extent, of the title which it will prefix to a Bill.

4. Under Constitution, Section 23, Article V, the title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of

the Bill, as mentioned in the title. Details need not be mentioned. The title need not contain a complete list of all matters covered by the Act.

5. If the court is in doubt as to the constitutionality of a Bill, it should sustain the Act.

6. Laws of 1903, p. 232, c. 120, Section 15, entitled "An Act to create the office of meat and milk inspector for the state of Montana, and prescribing his powers and duties and compensation therefor," imposing a license fee on persons selling milk, and authorizing the collection thereof by the inspector, does not violate Constitution, Article V, Section 23, providing that no Bill shall be passed containing more than one subject, which shall be clearly expressed in its title.

7. The license fee provided for in Laws of 1903, p. 232, c. 120, Section 15, imposed on persons selling milk, and authorizing the collection thereof by the meat and milk inspector, which office is created by the Act, is not a tax, though required to be paid into the state treasury.

8. The license fee provided for by Chapter 120, Section 15, Laws of 1903, not being a "tax," the legislature had power to determine by what agency the collection thereof should be made.

9. Laws of 1903, p. 226, c. 120, creating the office of meat and milk inspector, imposing a license fee on the right to do business with a vehicle by an owner thereof who milks over five cows, and exempting others, is not objectionable as an unreasonable classification of dairies.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

L. McKINNEY was convicted of conveying and selling milk and cream without a license, and appeals. Affirmed.

*Messrs. Nolan & Loeb,* for Appellant.

A license charge or fee is a tax within the meaning of the term "tax" as employed in all sections of the Constitution of Montana, other than the "uniformity clause." (*State ex rel. Sam Toi* v. *French,* 17 Mont. 54.)

The exaction of one dollar per month license fee under Section 15 was made by the legislature with a view to revenue. Where the fee required for a license is intended for revenue, its exaction is the exercise of the power of taxation. (*Home Ins. Co.* v. *City of Augusta,* 50 Ga. 530; Cooley, Const. Lim. 201.)

The legislature has no power to pass a law directing the payment of a license tax to a meat and milk inspector, and the Act, in so far as the law attempts to confer any power upon the meat and milk inspector to collect this license, is void as being unconstitutional. (*Mutual Life Ins. Co.* v. *Martien,* 27 Mont. 437.)

A dairy may have one hundred (100) cows (no vehicle being used in the delivery and sale of the milk) and the entire product may be offered for sale and sold in a store, booth, stand, market place, depot or any place whatsoever, and no license tax is required or imposed, the only requirement being that the vender shall register in the book of the inspector (Subd. 5, page 233, Laws 1903). The tax imposed then, by Section 15, is a vehicle tax, to be paid by the owner of the vehicle. The owner of a five (5) cow dairy may employ two (2) vehicles in the sale and delivery of milk, and the owners of the vehicles are not subjected to the license. The owner of a six (6) cow dairy may employ one (1) vehicle in the sale and delivery of milk and is subjected to the license tax; and the owner of a one hundred (100) cow dairy may sell his entire product at a depot or market stand or booth, and he is not required to pay any license at all under Section 15. The classification of those who are subjected to this vehicle tax is neither based on nor measured by the number of vehicles or on the kind of vehicles, but is based on the number of cows in the dairy from which the milk produced is delivered in vehicles, exempting large dairies not using vehicles, but delivering their entire product at a depot. This law, therefore, acts unequally and the classifications are unjust and unreasonable. It is also void because of the exemption of part of a class. (*State* v. *Hammer,* 42 N. J. Law, 440; *Ex parte Frank,* 52 Cal. 606; *Parish* v. *Cochren,* 20 La. Ann. 373; *Sutton* v. *State* (Tenn.), 36 S. W. 697; *State* v. *Loomis,* 115 Mo. 307, 22 S. W. Rep. 350, 21 L. R. A. 789; *State* v. *Haun,* 61 Kan. 146, 59 Pac. 431, (approved 183 U. S. 112); *State* v. *Goodwill,* 33 W. Va. 179, 10 S. E. 286, 6 L. R. A. 621; *Ex parte Jeutzsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 665; *City of Evansville* v. *State,* 18 Ind. Sup. 420, 21 N. E. 267; *City of Evansville* v. *State,* 4 L. R. A. 93; *Magoun* v. *Bank,* 170 U. S. 283; *State* v. *Garbraski,* 111 Iowa, 496; *State* v. *Ashbrook,* 154 Mo. 375; Constitution, Art. V, Sec. 26; *Lossen County* v. *Cone,* 72 Cal. 387; *Pacific Junction* v. *Dyer,* 64 Iowa, 38; *Cone* v. *Clerk,* 21 Pac. Co. Rep. 495; *Hotchkiss* v.

*Marion,* 12 Mont. 218; *State* v. *Conlon,* 55 Conn. 478, 48 Am. St. Rep. 22.)

Section 15 of the Act under consideration is void, for the reason that the title of the Act is defective under the provisions of Section 23, Art. V, of the Constitution. (*State* v. *Anaconda C. M. Co.,* 23 Mont. 498; *Messenger* v. *State,* 25 Neb. 674; *State* v. *Clinton,* 27 La. Ann. 40; *People* v. *Congdon,* 77 Mich. 351; *People* v. *Phippin,* 70 Mich. 6; *Newherter* v. *Price,* 11 Ind. 199; *State* v. *Bankers, etc. M. B. A.,* 23 Kan. 499; *Carr* v. *Thomas,* 18 Fla. 736; *Ives* v. *Norris,* 13 Neb. 252; *Johnson* v. *Spicer,* 107 N. Y. 185; *Williams* v. *Payson,* 14 La. Ann. 7; *Savannah* v. *State,* 4 Ga. 26; *State* v. *Courtney* (Mont.), 71 Pac. 308.)

*Mr. James Donovan, Attorney General,* and *Mr. F. W. Mclttler, First Assistant Attorney General,* for the State.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Appeal from final judgment. A complaint was filed against defendant in a justice court, alleging that he "willfully and unlawfully conveyed milk and cream in a vehicle for the purpose of selling the same, and did sell the same, in the county of Lewis and Clarke without first procuring a license as provided by law." Upon this complaint a warrant was issued. The defendant was arrested, and demurred to the complaint. The demurrer was overruled, and defendant entered a plea of not guilty. The case was tried, and resulted in a judgment against defendant. On appeal to the district court the case was again tried, by the court sitting without a jury—jury trial having been expressly waived—and judgment passed against the defendant, from which this appeal is taken.

The prosecution was conducted under Chapter 120, page 226, of the Laws of 1903, entitled "An Act to create the office of meat and milk inspector for the state of Montana, and prescribing their powers and duties and compensation therefor." The

only part of this Act which is brought into controversy by this appeal is Section 15 thereof, which the attorneys for the appellant urge is unconstitutional, on the four following grounds: (1) Because the license provided in Section 15 is a tax, which can only be collected by the county treasurer, and not by the inspector; (2) because the law acts unequally, and the classifications are unjust and unreasonable; (3) because the law allows exemptions of a part of a class from payment of any fees; (4) because the title of the bill is defective.

Section 15 of this Act, which is attacked, is in the following language:

"Any person, persons, or corporation, in counties in which a meat and milk inspector is appointed, who conveys milk or cream in vehicles of any character whatsoever, for the purpose of selling it in such counties, shall annually, before the 1st day of June, be licensed by the meat and milk inspector of said county to sell milk and cream within the limits thereof, and shall pay to such inspector for each and every vehicle of whatsoever character used in the sale or delivery of such milk or cream or dairy product, the sum of twelve dollars ($12.00) per annum, payable quarterly in advance, which sum shall be paid into the state treasury by such inspector, quarterly, as received, to be turned into the general fund, and receipted therefor by said treasurer to said inspector.

"Subd. 1.   Licenses shall be issued only in the name of the owner of the vehicles, carriages or other conveyances.

"Subd. 2.   Such license shall, for the purposes of this Act, be conclusive evidence of ownership, and shall not be assigned or transferred.

"Subd. 3.   Each license shall contain the number thereof, the name, the residence, the place of business, the number of vehicle used by the person, persons, or corporation, and the name of every driver or other person employed by the owner or owners in carrying, conveying or selling milk or cream.

"Subd. 4.   Each person, persons, or corporations shall, before engaging in the sale of milk or cream, or dairy products

of any character whatsoever, cause his name and number of his license to be placed legibly on each outer side of all carriages or vehicles or conveyance of whatsoever character used by him in the conveyance for sale of milk or cream.

"Subd. 5. Every person or persons, company or corporation, before selling milk or cream, or offering the same for sale in a store, booth, stand, market place, depot, or any place whatsoever, in a county in which a meat and milk inspector is appointed, shall register in the books of such inspector his or her name, or the name of the company or corporation, and proposed place of sale.

"Subd. 6. Nothing in Section 15, with the exception of subdivision five, shall be construed to apply to dairies milking five cows, or less."

In considering the questions raised on this appeal, we shall not follow the order in which they are treated in the briefs, but shall first take up the last one argued, viz., is the Act in contravention of Section 23, Article V, of the Constitution? This section is as follows: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." It is insisted that the imposition of a license fee upon persons selling milk, or the collection thereof, is not "clearly (or at all) expressed" in the title of the Act, and therefore the Act, to this extent, is unconstitutional and void.

For a clear understanding of the question under consideration, it seems important to announce a few general legal principles viz.:

First. The purposes of this constitutional provision are to prevent the legislature from the enactment of laws surreptitiously; to prevent "logrolling" legislation; to give to the people general notice of the character of proposed legislation, so they may not be misled; to give all interested an opportunity to ap-

pear before committees of the legislature and be heard upon the advisability of the proposed legislation; to advise members of the legislature of the character of the proposed legislation, and give each an opportunity to intelligently watch the course of the proposed Bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced by this court in numerous opinions that a statement of the rule and a citation of cases would seem sufficient. (*State* v. *Brown,* 29 Mont. 179, 74 Pac. 366; *Western Ranches* v. *Custer County,* 28 Mont. 278, 72 Pac. 659; *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308; *State* v. *Anaconda C. M. Co.,* 23 Mont. 498, 59 Pac. 854; *Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100.)

Second. While all the provisions of the constitution are "mandatory and prohibitory" (Art. III, Sec. 29), yet the courts, bearing in mind that the legislature is a co-ordinate branch of the government, and that its action, if fair, should be sustained, have given this section of the constitution a liberal construction, so as to not interfere with or impede proper legislative functions. (*Western Ranches* v. *Custer County,* 28 Mont. 278, 72 Pac. 659; *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308; *State ex rel. Olsen* v. *Board of Control,* 85 Minn. 165, 88 N. W. 533; *State ex rel. Green* v. *Power,* 63 Neb. 496, 88 N. W. 769; *Ballentyne* v. *Wickersham,* 75 Ala. 533; *Van Horn* v. *State,* 46 Neb. 62, 64 N. W. 365; *Lien* v. *Board of County Com'rs,* 80 Minn. 58, 82 N. W. 1094.)

Third. The legislature is the judge, to a great extent, at least, of the title which it will prefix to a Bill; and the court has no right to hold a title void because, in its opinion, a better one might have been used. (*State ex rel. Olsen* v. *Board of Control,* 85 Minn. 165, 88 N. W. 533; *State ex rel. Green* v. *Power,* 63 Neb. 496, 88 N. W. 769; *State ex rel. Churchill* v. *Bemis,* 45 Neb. 724, 64 N. W. 348.)

Fourth. The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned

in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the Bill, as mentioned in the title. Details need not be mentioned. The title need not contain a complete list of all matters covered by the Act. (*Park* v. *Modern Woodmen,* 181 Ill. 214, 54 N. E. 932; *State ex rel. Graham* v. *Tibbetts,* 52 Neb. 228, 71 N. W. 990, 66 Am. St. Rep. 492; *City of Newark* v. *Mt. Pleasant Cemetery Co.,* 58 N. J. Law, 168, 33 Atl. 396; *Barksdale* v. *City of Laurens,* 58 S. C. 413, 36 S. E. 893; *Prison Association* v. *Ashby,* 93 Va. 667, 25 S. E. 893; *Weber* v. *Commonwealth* (Ky.), 72 S. W. 30.)

Fifth. If the court, after an application of all these principles, is still in doubt as to the constitutionality of the Bill, it should sustain the Act. (*State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551; Cooley's Const. Lim. 182; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267.)

The purpose of the Act was the very laudable one of providing for the inspection of meat and dairy products sold by the producers to the consumers within the state, and to prevent a sale of any of the same, except such as might, after inspection, be found to be entirely healthful. The Act provides for the inspection of fresh meats, fish and poultry; and, after providing the necessary means for that purpose, it takes up the inspection of dairies and dairy products.

Section 9 makes it the duty of the inspector to inspect each dairy supplying milk to the public in his county for human consumption not less than once in every month during the calendar year, and provides that he shall, every ninety days, issue to each person or persons or corporation supplying milk a certificate of health, which shall include a certificate of the sanitary condition of the dairy every ninety days.

Section 10 provides that "it shall be unlawful * * * to feed unwholesome food of whatsoever character to his dairy cows, and that each dairyman supplying milk to the public must have for each cow, his certificate of health, including the tuberculum test made by said inspector, stating that each cow

is free from tuberculosis or consumption, or any other infectious disease whatsoever."

Section 11 provides that it is the duty of the inspector to prohibit any one from selling milk whenever, in his observation, proper cleanliness of utensils used in the accumulation, handling, or marketing of the milk is not up to the proper standard, "until such time as proper methods of cleanliness and precautions are used in the handling of said milk."

Section 12 provides that all persons supplying milk "shall keep their barns or stables free from filth or manure or other substances likely to harbor or favor the growth of disease-producing germs therein, or about their stables or barns likely to be carried in, or to contaminate such milk or dairy product."

Section 13 provides that any resident of the state, to whose knowledge or observation comes the fact that any dairyman is failing to observe the provisions of this section, shall notify the inspector, who shall at once visit the premises indicated; and, if he finds the complaint true, he shall prohibit the selling of the product of the dairy, "and file an information against the dairyman."

Section 14 requires that such inspector shall keep in his book of records the names and places of business of all persons engaged in the sale of milk and cream within the county, and gives the inspector power to enter all places in which cream or dairy products are stored or offered for sale, and all vehicles used for the conveyance of milk or cream, and take samples therefrom for analysis.

Then comes the disputed Section 15, which we have already quoted at length in the opinion.

Section 16 provides the conditions under which one dealing in milk or cream shall be deemed guilty of misdemeanor.

Sections 17 to 20 refer to the standard of the different classes of milk and cream. The rest of the Act is unimportant in the consideration of the questions involved in this case.

In our judgment, the decisions of this court in the cases of *State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441, and *Snook* v.

*Clark,* 20 Mont. 230, 50 Pac. 718, are conclusive against the contention of counsel for appellant. In the *Bernheim Case,* the title of the Act was "An Act to regulate the sale and redemption of transportation tickets of common carriers." The Act, in its body, made it unlawful for any person not in possession of a certificate or license provided for in another part of the Act to sell tickets. It also provided a penalty for the violation of that portion of the Act. It was contended that the penalty part of the statute was not within the title. Yet this court said: · "Experience amply demonstrates that to regulate a particular business by law, and put a statute regulating it into practical and effective operation, there must be punishments prescribed and imposed upon those who violate its commands. But such penalties need not be included in the title, for they are but 'ends and means necessary or convenient for the accomplishment of the general object.' "

In the case of *Snook* v. *Clark* the title of the Act was "An Act requiring railroad companies to pay for damages to stock." In the body of the Act it was provided that railroad companies should fence their tracks. Counsel for the railroad company contended that, the title of the Act being silent as to fences, the law was inoperative, but the supreme court says: "This question was passed upon by this court in *State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441."

Now, the appointment of inspectors, and the placing upon such inspectors certain duties and labors, in order to make the Act practical and effective in its operation, requires that compensation be provided for the performance of these duties; and we must conclude, under the above authorities, that, even if the title of the Act was silent as to the intention of the legislature to provide such compensation, the body of the Act might have contained provisions for that purpose, as such provisions are but "ends and means necessary or convenient for the accomplishment of the general object." The purpose of the Act is clearly apparent, viz., to regulate the inspection and sales of meat and dairy products, and to provide a fund to reimburse

the state for its expenditures in and about the carrying of the regulations into effect. The title of the Act is general. Its body may contain any provisions necessary to carry the purpose of the Act into effect. Of what use would be an inspector, unless he might inspect something? The Act, therefore, properly determines and specifically provides for the inspection of certain articles intended to be covered by the Act. The inspector could not be required to perform the labors of inspection unless compensated. The legislature, in exercising the police power vested in it, had the right to impose the cost of inspection, and all the necessary expenses of carrying the regulations into effect, upon the persons controlling the products to be inspected. It might provide that the state should become primarily liable for the payment of this cost, and in the same Act further provide for reimbursement to the state, in whole or in part, from the same source upon which it could have imposed the cost in the first instance. Can it be said that the title does not notify every person that the legislature intends to enact a law covering all these items? The title announces that the legislature intends to enact a law "creating the office of meat and milk inspector, and prescribing his duties, powers and compensation." This, in our opinion, gives notice to every one of what the legislature intended to accomplish. If the legislature had power to accomplish this end by different methods, all persons were charged with knowledge that it might, for that purpose, exercise any method within its power. If the law allows the legislature to exercise the power above mentioned, every person within the state is charged with the knowledge of that law, and therefore with notice that the legislature might exercise the power by any authorized method. Every provision of the Act is germane to the announcement made in the title, and is unquestionably for the purpose of enabling the regulations prescribed in the Act to be carried into effect. All the general objects of the Act are expressed in the title.

True, the provisions of the Act relative to the license imposed upon meats and upon dairy products are different, but the duties of the inspector as to each of these classes are differ-

ent.   Much more extensive duties are imposed upon the inspector as to dairy products than as to meat.   The legislature might well have concluded that the provisions for the imposition of a license fee on meat were not applicable to the imposition of license fees upon dairy products.   The license fee imposed upon persons selling meats is provided by Section 4 of the Act, and is designated "an inspection license," while the license imposed upon dealers in dairy products is provided by Section 15, and is designated as "license to sell milk and cream." Notwithstanding this difference, it is plainly apparent that the license fees imposed upon both classes were for the purpose of reimbursing the state for its outlay in carrying the Act into effect.   The license fee in such case simply amounts to an inspection fee.

The Supreme Court of Minnesota (*State ex rel. Olsen* v. *Board of Control,* 85 Minn. 165,) has so thoroughly discussed the principles which must control a court in passing upon the constitutionality of a statute where objections are made to its title that we feel constrained to quote at length from its decision: "Every reasonable presumption should be in favor of the title, which should be more liberally construed than the body of the law, giving to the general words in such title paramount weight.   It is not essential that the best or even an accurate title be employed, if it be suggestive in any sense of the legislative purpose.   The remedy to be secured, and mischief avoided, is the best test of a sufficient title, which is to prevent it from being made a cloak or artifice to distract attention from the substance of the act itself.   The title, if objected to, should be aided, if possible, by resort to the body of the act, to show that it was not intended by such title to mislead the legislature or the people, nor distract their attention from its distinctive measures.   Throughout all the decisions it will be found that it is a regard for the law itself, rather than any puerile consideration for the title, which is made the essential object of judicial anxiety.   A review of the cases where this court has set aside statutes because in violation of Section 27, Article 4

[Constitution of Minnesota], will show that the act was in every respect, to adopt the language of Justice Flandrau in *Board of Supervisors* v. *Heenan, supra* [2 Minn. 330; Gil. 281], entirely foreign to the object 'expressed in the title;' thus furnishing the evidence of such a fraud in securing its enactment that the law 'would never have received the sanction of the legislature, had the members known the contents of the act.' No better test, consistent with every subsequent decision on this subject, can be made than by a correct answer to the question: Is this title in every respect *'so foreign to the purpose of the act, or some integral part of it,* that it gives no intimation thereof?' It may seem, from a cursory glance at these liberal views which have been adopted to save statutes when attacked upon the ground of defective titles that little is left of inherent vitality in the constitutional limitation involved; but that this is only a cursory view must be apparent upon the reflection that the constitutional limitation was solely to prevent fraud and deception, when determinable from the evidence found in the act and its title read together, for obviously no other evidence is open to the courts. The constitutional provision sounded a note of warning that has generally protected the people from legislative juggles, while the liberal interpretation since given by this court has saved many wholesome laws that otherwise would have been defeated by a narrow view of its purpose. Legislators may not have become absolutely perfect, and it may be that fraud will hereafter finesse into an act a 'woodchuck' which will be so apparent on judicial review as to require the court to nullify a result which never expressed the real legislative purpose. When such occasion does arise, this provision of our constitution will, we believe, be found to retain its pristine vigor, with plenary power to prevent the consummation of the infamy. In the meantime it stands forth in the organic law a danger signal to protect the people from the mischief that called it into being." We also refer to the very extensive and elaborate monographic notes found in 64 Am. St. Rep. 79 *et seq.,* and 79 Am. St. Rep. 456 *et seq.*

Tested by the application of the above rules, we cannot say

that the Act is unconstitutional because of the ·alleged defect in the title.

2. Is the 'license fee, provided for, a ·tax? We are clearly of the opinion that it is not. Counsel for the appellant rely upon *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415, as conclusive that it is a tax. A careful examination of that case discloses that the court only decided that a license fee imposed upon laundries was not a tax, as falling within the equality and uniformity provisions of the constitution. The court says: "The particular distinctions as to when a license fee is a tax, and when it is not, we shall not discuss, further than to give the reasons for our opinion that this license fee under consideration is not a tax, as falling within the equality and uniformity provisions of the Constitution." (See, generally, *State* v. *Camp Sing,* 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551; *Littlefield* v. *State,* 42 Neb. 223, 60 N. W. 724, 28 L. R. A. 588, 47 Am. St. Rep. 697; *State* v. *Bixman,* 162 Mo. 1, 62 S. W. 828; *Patapsco Guano Co.* v. *North Carolina Board of Agr.,* 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191; *City of Jacksonville* v. *Ledwith,* 26 Fla. 163, 7 South. 885, 9 L. R. A. 69, 23 Am. St. Rep. 558; *Willis* v. *Standard Oil Co.,* 50 Minn. 290, 52 N. W. 652.)

In *Littlefield* v. *State, supra,* the court says: "But by 'taxation,' as the term is here employed, is meant the providing of revenue for the ordinary expenses of state or municipal government. It does not follow, therefore, that an ordinance will be held void simply because it provides for a fund to be derived from license fees. Such a measure will be upheld by the courts whenever it appears to have been designed to promote the welfare of the public, and the revenue derived therefrom is not disproportionate to the cost of its enforcement and the regulation of the business to which it applies."

In *Willis* v. *Standard Oil Co., supra,* the court says: "That the state may make any business requiring police regulation pay the expense of regulating and controlling it, and that this

may be done by exacting fees, license fees, or inspection fees from those engaged in the business, no one disputes. On its face, this law is a *bona fide* police regulation—a proper inspection law—and the fees are in good faith exacted to reimburse the state in the expense of inspection and enforcing observance of the law."

It will be noticed that, by Section 2 of the Act, the annual salary of the meat and milk inspector is to be paid out of the general state fund monthly, and that the license authorized to be collected by the inspector under Section 15 shall be paid into the state treasury quarterly, to be turned into the general fund. It makes no difference that the license fees, when collected, are required to be paid into the state treasury. (*State* v. *Bixman,* 162 Mo. 1, 62 S. W. 828; *Willis* v. *Standard Oil Co.,* 50 Minn. 290, 52 N. W. 652.) Their collection and deposit is clearly for the purpose of the reimbursement of the state for moneys expended in carrying the Act into effect, and not to obtain revenue for general governmental purposes.

It being a license, and not a tax, the legislature might determine by what agency the collection should be made; and the case of *Mutual Life Ins. Co.* v. *Martien,* 27 Mont. 437, 71 Pac. 470, has no application.

3. Is the classification for the purpose of license unreasonable? We think not. Counsel for appellant seem to have fallen into error as to the basis of this classification. They say that it is based upon the number of vehicles employed, and each vehicle is taxed. The number of vehicles employed has nothing to do with the classification. It is based solely upon the number of cows milked. The license fee is not imposed upon the vehicle, but upon the right to do business with a vehicle by an owner thereof, who milks over five cows. The number of vehicles is only important in determining the amount of the license fee imposed. Counsel frankly stated in his oral argument that he would not contend that a classification based upon the number of cows milked would be unauthorized. The question of classification of objects upon which a license fee is imposed

is purely legislative, and, in absence of abuse, will not be interfered with by the court.   (See, generally, *St. Louis v. Weber,* 44 Mo. 547; *State v. Broadbelt,* 89 Md. 565, 43 Atl. 771, 45 L. R. A. 437, 73 Am. St. Rep. 201; *Singer Mfg. Co. v. Wright,* 97 Ga. 114, 25 S. E. 497, 35 L. R. A. 497.)

4.   The consideration of the question of exemptions, as raised by the brief, has been fully covered in the treatment of classification of subjects by the Act.   It is a self-evident proposition that, when the legislature designates certain subjects upon which license fees are imposed, all subjects not named are excluded from the operation of the Act.   The exercise of the power of designation rests in the legislature, and will not be interfered with by the court unless clearly beyond constitutional limits of the power given to the legislature.

This disposes of all the questions raised or argued upon this appeal.   The sufficiency of the complaint upon which the prosecution is based was not even referred to, and therefore was not considered or determined by the court.

We recommend that the judgment be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment is affirmed.

