*Peremptory mandamus awarded.*

---

JOHN PIATT, SUPERVISOR OF THE TOWNSHIP OF WEL-LER, Appellant, *v.* THE PEOPLE, *ex relatione* The American Central Railway Company, Appellees.

APPEAL FROM HENRY.

Under the act of 1859, if the votes shall be in favor of a subscription in aid of any railroad, the action of the supervisor is ministerial only. He is without discretion, and must make the subscription and issue the bonds.

On an issue as to the regularity of an election for such subscription, the copy of election held, etc., connected with the evidence of the clerk of the election, the poll books, certified by the clerk as being a true and correct copy of an as to its authenticity, will be admitted in proof. A substantial compliance with the requisitions of the law, will only be required.

Instructions should be based upon the issues submitted to the jury.

A mere irregularity in conducting an election, which does not deprive any voter of his franchise, or allow an illegal vote, or change the result, will not vitiate.

Although the law directs that the polls shall be closed at five o'clock, and this question is in issue, unless it is made to appear that votes were cast after that hour which change the result, the irregularity would not be fatal.

An agreement among certain voters to "pair off," and absent themselves, is of no validity; and the judges of election are not required to regard it; and the votes of such parties may rightfully be taken.

The constitutionality of the act of 1859, is affirmed by the decisions in 19 Illinois, 406, and 25 Illinois, 75.

THIS cause was heard before John H. Howe, Judge, at regular October term, A. D. 1860.

The petition is set out at full length in the writ, which is as follows:

Be it known, that the People of the State of Illinois, upon

the relation of the " American Central Railway," did, on the 26th day of September, A. D. 1860, by their attorneys, file in the office of the clerk of the Circuit Court of Henry county and State of Illinois, their petition under oath for an alternative writ of mandamus, which said petition is in the words and figures following :

To the Hon., etc., Judge of the Sixth Judicial Circuit of the State of Illinois.

In the name of the people of the State of Illinois, the American Central Railway, etc., states, etc.

That by an act of the legislature of said State, approved Feb. 9, 1853, the Western Air-Line Railroad Company was duly incorporated. That by an act approved Feb. 21, 1859, the name of the Western Air-Line Railroad Company was changed to American Central Railway.

That in addition to the powers previously conferred upon said company, the said amendatory act authorized the townships through which the road is located, and other townships along the line within four miles of said road, to subscribe in their corporate capacity to the capital stock of said railway, such an amount as they may severally determine, not exceeding sixty cents per acre for each acre of land in said townships, and to issue bonds for the amount.

The said amendatory act is made a part of the bill, and referred to as an exhibit.

The American Central Railway is located through the township of Weller. Said township is numbered as Township 14 north, Range 3 east of the 4th principal meridian.

In pursuance of said act, five legal voters of Weller delivered the clerk of said township a requisition in writing, in conformity with section three of said act, stating the amount proposed to be subscribed, the number of bonds to be issued, the respective amounts, the time when the bonds and interest shall be made payable, requiring the clerk to call an election, etc.

The requisition is made a part of the bill, and is referred to as an exhibit.

That the clerk of said township gave notice of an election

to be held at Bishop Hill, in said township, on the 25th day of May, 1859.

A copy of the election notice is made a part of the bill, and is referred to as an exhibit.

That on the 25th day of May, 1859, the voters of said township assembled, and chose judges and clerks and held an election, conducting it according to the general election law of the State, except wherein otherwise provided for by this special act. That the said judges closed the polls of said election at five o'clock P. M. of said day.

That they certified at the foot of the poll book, that there were cast at said election sixty-nine votes; that thirty-nine votes were for subscription, and thirty against subscription.

A copy of the poll book is made a part of the bill, and is referred to as an exhibit.

That a majority of the voters of said township voted for subscription, and so the township decided to take stock in said railway to the amount of twelve thousand three hundred dollars, for which amount the said township should have issued its bonds.

The amount and the time of the payment of said bonds are set out at length in the bill.

That there are twenty-two thousand five hundred acres of land in said township, and the subscription voted does not exceed sixty cents per acre on said land.

After the said election, it became the duty of the supervisor of Weller, to issue the bonds of the said township, with coupons, etc., in amounts as called for by the president or secretary of said railway.

That John Piatt was and is the supervisor of said township, and is made defendant to this petition.

That Wheeler B. Sweet was a director of said railway, and authorized to call for and receive of said Piatt, the said township bonds, and to deliver to him receipts for said bonds in payment for the amount of stock so subscribed by said township.

The board of directors of said railway, in a meeting June 24, 1859, passed a resolution that the subscription of said

Weller township be required to be paid in the bonds of said township at par, in installments, one-half when work is recommenced in said township, one-fourth thirty days after, and the balance in sixty days after, and that the secretary of said company be instructed, on receiving said bonds, to issue certificates of stock to said township.

The resolution is made a part of the bill, and is referred to as an exhibit.

That a copy of said resolution was served on John Piatt, supervisor as aforesaid, July 25, 1859, before which date said railway had commenced work in said township.

The president of said railway caused a notice in writing to be served on said John Piatt, January 9, 1860, requesting him to issue and deliver to the said Wheeler B. Sweet, agent, etc., the bonds of said township, in amounts as there specified.

The notice is made a part of the petition, and referred to as an exhibit.

And tendered said Piatt a receipt for said bonds required to be issued at that time.

The receipt is made a part of the petition, and referred to as an exhibit.

And also tendered said John Piatt a blank subscription to the capital stock of said railway.

The blank subscription is made a part of the petition, and referred to as an exhibit.

That it was the duty of the said John Piatt, supervisor, etc., to have subscribed to the stock of the said railway, and issued the bonds of the said township, in amounts as demanded, to said Wheeler B. Sweet.

But said John Piatt refused, and still absolutely refuses to subscribe to stock of the said railway, or to issue the bonds of the said township.

That the relator has no adequate remedy other than by application for a mandamus, commanding the said Piatt, etc.

That Allan Husted, clerk of said township, is willing to do his duty in signing said bonds.

Prayer for an alternative writ of mandamus, commanding the said John Piatt to issue said bonds, or show cause, etc.

Affidavit of Wheeler B. Sweet to the truth of the petition.

Order of J. H. Howe, Judge of the Sixth Judicial Circuit, to the clerk, to issue an alternative writ of mandamus, as prayed for in the petition, returnable October 15, 1860.

The respondent filed a return, which is set out in the opinion at length.

A jury was called to try the issue raised by the return.

The relator offered in evidence a law, entitled " An Act to incorporate the Western Air-Line Railroad Company." Sess. Laws (private) 1853, p. 95. Also a law entitled " An Act to amend an act to incorporate the Western Air-Line Railroad Company." Sess. Laws (private) 1859, p. 526.

The relator also called *Allan Husted*, a witness, who testified as follows :

I was town clerk of Weller township in the spring of 1859 ; was present at the election, May 25, 1859 ; was clerk of said election. The paper now shown me, (set out in the bill), is a poll book of said election. I was present when the election closed. It closed a little after five o'clock. The election was opened late in the forenoon. Am not positive it was opened until after dinner. No votes were taken until after dinner. It was after five o'clock when the polls were closed—say about half past five. I think Mr. Maxwell called attention to the fact that it was after five o'clock, and time to close the polls. There were some votes taken after five o'clock—cannot say how many.

Also called *Henry Emery*, witness, etc. I was one of the judges of the election, etc. I think the polls of said election were closed about fifteen or twenty minutes after five o'clock by the town clock. When the town clock struck five, I think I made proclamation that the polls would be closed in fifteen minutes. Some persons voted after that time—cannot tell how many. I know of one reason why they were kept open, that was, a difference in watches; another reason was, that I thought in law it was always five until it was six o'clock. There was no purpose on my part to affect the result of the election. I don't know whether the town clock was right or not.

The plaintiff then offered in evidence the poll book of the election, with the notice attached. The defendant objected,

1st. Because it appeared that the election was irregular and illegal.

2nd. Because the paper purporting to be a poll book and notice, did not appear to be a record on file in the County Court, as a record of which it was offered.

3rd. No certificate appeared on said paper of the result of the election.

The court overruled the objections, and the defendant excepted.

*Jacob Jacobson* was called as a witness, etc. I voted about five o'clock. It may have been after five. I voted for subscription.

*Daniel Bonar*, called as a witness, etc. I am county clerk of Henry county. I recollect the paper now shown me, (the poll book.) It has been in my office except when taken out to be examined. I cannot say when I received it, though I think it was soon after the election—I think not more than a week after.

This was all the plaintiff's evidence.

The defendant called *Thomas Maxwell*, a witness, sworn, etc.

Was present when the polls were closed. Don't remember the time exactly. It was twenty minutes after five, and the polls were kept open after that some time. Votes were polled after five o'clock. When the town clock struck five, demand was made to close the polls. The act for holding the election was read, and some controversy took place after the proclamation was made. The polls were continued open for some time. Cannot tell who voted after five o'clock, but Mr. Jacobson was among them.

I think twelve or fourteen voted after the clock struck five, but cannot swear positively as to the number.

The court, at the request of the parties, gave instructions, which are copied into the opinion.

There was a verdict for the relators.

The errors assigned are, That the court erred in sustaining

the demurrer to any part of the defendant's return. The demurrer should have been overruled.

The court erred in admitting improper evidence for the relator.

The court erred in giving the instructions asked for by the relator. They were not the law, and should have been refused.

The court erred in refusing to give the instructions asked for by the defendant. They were the law, and should have been given.

The act is unconstitutional, and the petition is insufficient to sustain the verdict.

The verdict of the jury was contrary to the law, and was wholly unsupported by the evidence. It should have been for the respondent.

The defendant's return put in issue the legality of all the proceedings under the election law, and the relator did not offer proof to sustain the legality of the same. The verdict and judgment for the relator were erroneous, and contrary to the law of the land.

The court erred in not granting a new trial asked for by the defendant.

The order for a peremptory writ was an error, and the judgment should have been for the defendant.

It was a matter of discretion with the supervisor, whether he should issue the bonds of the township or make any subscription to the stock of said railway, and it was error in the court to award a writ of mandamus to compel him to subscribe against his discretion.

The vote of the citizens of Weller was merely advisory to the supervisor, and not compulsory, and no writ of mandamus will lie, and the order for the writ was erroneous.

H. W. WELLS, for Appellant.

The demurrer to the third count in the defendant's return was improperly sustained.

The question is not, whether the irregularities in this election would avoid an election held under the general election

law.  Properly considered, this special act under which this election was held, (Sess. Laws 1859, p. 526,) was only a permission to the township to contract with the railroad company and take its stock.  That contract or subscription could only be made by the supervisor, and by him only on the advice and consent of the electors of the township, to be expressed by vote.

It follows, then, that any practices to deceive or defraud either party to the contract, would avoid the contract as to that party.

The third count in the return, charges that the agents of the relator and the judges of the election conspired together to change the result of the election, and as a result of that conspiracy, they did change the result of the election ; and to attain this result, they practiced a fraud on divers electors who would otherwise have voted at said election.  The return charges the fraud clearly, and the demurrer should have been overruled.

An agreement between voters to "pair off" is not contrary to any law, nor to public policy, and though the courts will not award damages for the breach of such an agreement, yet they will not reward the breach of it by permitting a party to derive direct pecuniary advantage from such a breach, when made by his connivance.

The act under which this election was held, was a special act, and only authorized the voters in a certain way, at a certain time, (before a certain hour—five o'clock), to express or record their opinion as to the propriety of subscribing stock, etc., and the fact that enough votes were received after the hour had expired, is sufficient to avoid the election, and it is not necessary that it appear affirmatively, by evidence, that the votes were for subscription.  Sess. Laws 1859, p. 526, sec. 5.

The same rules which apply to a general election, will not apply to this.  The only authority given the township for meeting and voting, is the act, and the same act provides that the polls shall be closed at five o'clock.

It may be contended that time is not the essence of this

election, yet in this case, the irregularity in this election, and the facts that twelve or fourteen votes were cast after five o'clock, and that the rejection of any nine might have changed the result; the irregularity casts great uncertainty on the election, and should render it void. *People* v. *Cook,* 4 Selden, 68.

The court erred in admitting improper evidence for the relator.

The evidence improperly admitted was the poll book of the election.

There must always be a direct and positive refusal to do the act sought to be compelled by mandamus. The evidence discloses no such refusal, and it is not attempted to be proved. Bac. Abr., title Mandamus, 418.

The order for a peremptory writ was erroneous. The judgment should have been for the defendant.

The writ of mandamus will only lie to enforce a public right or public duty, and will not for the benefit of a trading company, unless some public right is to be enforced or public duty to be performed. *Rex* v. *Bank of England,* 2 Bar. & Ald. 620; *Rex* v. *London Ins. Co.,* 2 Bar. & Ald. 899.

In this case, though the people are the nominal plaintiffs, the writ is only for the benefit of a trading company. The bill or petition does not allege that any public rights will suffer, or any public interest be damaged by the failure of the defendant to do the act which they seek to compel him to do; neither does the petition allege that it is brought to compel the performance of any duty which, if neglected, will result in damage to the public or to any public corporation.

It is not too late to take this exception to the writ. It may be taken at any time after the return and before the peremptory writ issue. *Rex* v. *Margate Pier Co.,* 3 Bar. & Ald. 222; Sir Tho's Raymond Rep. 446, 469; Steph. Nisi Prius, p. 2323.

The defendant contends that it was a matter of discretion with him whether to subscribe to the stock of the relator or not, and that the vote was only advisory.

It cannot be contended that the vote was a subscription to

the capital stock of said railway. The subscription can only be made by the supervisor, on the advice or approval of the voters. If the voters advise or approve the subscription, then the supervisor may, in his discretion, subscribe, and issue the bonds. Sess. Laws 1859, p. 526, secs. 2 and 7; *The People, etc.,* v. *Tazewell Co. et al.,* 22 Ill. 147.

If, as is contended, the subscription was complete when the vote resulted in the affirmative, then the relator has an action on a contract against the township, and this writ will not lie.

The special act under which this vote was had, though different in words, is not different in meaning from the general law, which was construed in 22 Ill. 147. The general law uses the words, " such authorized subscription shall be made by judges or common council," and the special uses the words, " it shall be the duty of the supervisor of the township," etc.

When a discretionary power is vested in an officer, and he has exercised that discretion, a mandamus will not be granted against him. *People* v. *Supervisor of Albany,* 12 Johns. 414; *Hall* v. *Supervisor of Oneida,* 19 Johns. 259; *People* v. *Supervisor of N. Y.,* 1 Hill, 362.

A mandamus will not be granted unless there be a clear and distinct refusal to do that which it is the object of the act to enforce. Bac. Abr., title Mandamus, 418; 3 Adol. & Ell. 217.

The supervisor acts in a deliberative capacity, and had the discretion to subscribe to the stock of the said railway, or not, as he deemed for the best interest of the township.

The vote of the citizens was advisory, and only informed the supervisor, that in the opinion of the voters, he had better make the subscription, and the court will not compel the supervisor to act against his discretion. *Com.* v. *Haltz,* 6 Barr, 469; 22 Ill. 147.

T. G. Frost, for Appellees.

The constitutionality of the acts of the legislature similar to that in question, authorizing towns and cities to become subscribers to the capital stock of railroad companies, has been fully settled by repeated decisions of this court, on the subject.

*Prettyman* v. *Supervisors of Tazewell County*, 19 Ill. 406; *Johnson* v. *County of Stark*, 24 Ill. 75.

The agreement between different voters of the township to pair off and absent themselves from the polls, created no legal obligation even upon the parties thereto, and much less upon the judges of election, who had no right to regard the same, or to reject the vote of one elector upon any such ground.

The relators are not charged with being parties to said agreement or in any way privy thereto, and were under no obligation, legal or honorary, to pay any regard to the same, and could not therefore be chargeable with fraud or any wrongful act whatever.

A question as to the alleged irregularity in the conduct of the election, cannot properly be raised in this proceeding, and after such a lapse of time without the institution of any proper steps in apt time to set aside said election. 19 Ill. 406, 414.

The court properly refused to give the instructions asked by the defendant below, for the reason that they raised issues not presented by the pleadings. Tapping on Mandamus, star paging 309, 310, 339, 349.

The instructions given by the court on behalf of the relators, contained a correct exposition of the law applicable to the case, for the reason that even on a direct proceeding to set aside an election, or on a quo warranto, to test the title to an elective office, a mere irregularity in the conduct of an election, which deprives no legal voter of his vote, and does not change the result—does not invalidate the election. Every failure on the part of a ministerial or judicial officer to comply with the directions of the statute, does not render his acts and proceedings null and void, although he may be subject to censure, if not penalty or indictment.

These provisions are to a great extent directory, not jurisdictional. *The People* v. *Cook*, 4 Selden N. Y. Rep. 68; Angell & Ames on Corporations, 94.

Neither the certificate of election given by the judges, nor the election itself, could be impeached collaterally, but only upon a direct proceeding, instituted expressly for the purpose of testing the validity or result of said election, and that must

be taken in apt time, without any unreasonable delay.  *Prettyman* v. *Tazewell County*, 19 Ill. 406, 414; *Johnson* v. *County of Stark*, 24 Ill. 75, 90; *People* v. *Head*, 25 Ill. 328.

BREESE, J.  The Act of 1859, under which the election was held in this case, provides that in all cases when such election shall result in favor of the subscription herein authorized, it shall be the duty of the supervisor of such township to make such subscription, and to receive from said company the proper certificate therefor; he shall also execute, in the corporate names, and under the corporate seal of said township, the bonds of said township, and deliver the same to the president or secretary of said company, in proportional installments, as calls shall be made for payment of other subscriptions to the capital stock of said railroad company.  Such bonds shall be signed by the supervisor, etc.  (Session Laws 1859, p. 528.)

It will be seen, the supervisor has no discretion, should the vote be favorable to the subscription.  The act is mandatory— "it shall be the duty of the supervisor to make such subscription," etc.—he "shall" also execute the bonds and deliver the same to the president or secretary of the company, etc.—such bonds "shall" be signed by the supervisor, etc.  His act is ministerial only, having no judgment to render, and no power to adjudicate.  Stronger language of command need not be used.

To justify himself in refusing to make the subscription, the supervisor, in his return to the alternative writ, questions the legality of the election for the subscription, in these particulars:

1.  That a majority of the legal votes cast at the election, in said writ mentioned, was not in favor of the subscription therein referred to, as in said writ is alleged, but was against said subscription.

2.  That said election was not conducted according to law, as in said writ is alleged, but, on the contrary thereof, was conducted in violation of law, in this, to wit: that the polls were not closed at the hour of five o'clock P. M., as required by law, but were kept and continued open after said hour, on

the said day of election, by the judges thereof, and after
notice of the arrival of said hour and demand that the polls
be closed by divers electors of said town, then and there pres-
ent; and this respondent further certifies to said court, that,
after said hour on said day, and after notice thereof and de-
mand as aforesaid, the said judges, with the knowledge, and
at the request of divers servants and agents of the said relator,
and against the protest and remonstrance of divers electors of
said town, unlawfully, knowingly, and with intent to change
the result of said election, from a vote against said subscrip-
tion, to a vote in favor thereof, received, counted and returned
twelve votes—all of which said twelve votes were in favor of
said subscription, and the exclusion and rejection of which
said twelve votes, or any nine thereof, would have defeated
said subscription.

3. That said election was further fraudulent, and inopera-
tive to oblige him to issue the bonds of said town for said
subscription, in this, to wit: That the members of the Bishop
Hill Colony, entitled to vote at said election, were about
equally divided upon the question to be determined thereby,
and being so divided, for the purpose of avoiding loss of time
and labor and other inconveniences, it had been, and was
agreed by and on behalf of said several parties, members of
said colony as aforesaid, that none of said members would
vote at said election, but would submit the said question to
the vote of other electors of said town, voting at said election,
of which said agreement the said judges, before the opening
of said polls on said day, had notice; that before and at the
time for closing said polls, as fixed by law, it became and was
apparent, that a majority of the votes cast at said election
were against said subscription, and thereupon the agents of
said relator and the judges of said election, conspiring together
and contriving and intending to prevent this result, fraudu-
lently procured ten members of said colony of those who were
in favor of said subscription, to attend and cast their votes for
said subscription, in violation of said agreement, and although
all the members of said colony who were opposed to said sub-
scription were induced by the means aforesaid to withhold,

and did withhold their votes at said election, and which said ten votes so cast, counted and returned by said judges, were necessary, with the other votes cast in favor of said subscription, to constitute, and did so constitute a majority therefor of all the votes cast, received, counted and returned at said election; and this the said respondent is ready to verify, wherefore he prays judgment, etc.

To the truth of this return the defendant made an affidavit.

Upon the first two grounds of refusal, issues of fact were made up and tried by a jury, who found against the defendant. Objections were made, on the trial, to some of the evidence offered on the part of the relator, and exceptions taken by the defendant to the giving certain instructions for the relator, and also in refusing to give instructions asked by the defendant.

To the third objection presented in the return, the relator demurred, and the demurrer was sustained. These matters form the ground of the appeal, and we will dispose of them in their order.

The first objection to the evidence arose on offering, by relator, a certified copy of the poll book of the election for the subscription. This poll book seems, from the copy, to be made out in reasonable conformity with the act authorizing the election. It was signed by the judges and clerk of the election, and filed in the clerk's office of the County Court, and by him certified, under the seal of the court, to be a true copy. The statute on the subject, section 5, provides that it shall be the duty of the judges and clerks of said township election, at the close thereof, which shall be at five o'clock in the evening of said day, to certify at the foot of the poll books of said election the result thereof, and to deliver such poll books and certificates to the clerk of such township, whose duty it shall be to file one of the same in his office, and the other in the office of the clerk of the County Court of said county, within ten days from the day of such election. (Sess. Laws 1859, p. 528.)

The poll book as returned, gives the name of each voter, with the number of his vote, then follows the tally of the

judges and clerks, by which it appears the whole vote was 69, and the vote for subscription was 39, against subscription 30, and so certified and signed by the judges and clerks. The county clerk certifies, after copying the above in full, that " the foregoing is a true and correct copy of an election held at the time and place and for the purposes therein specified." This is somewhat informal, but it is substantially good, connected with the evidence of the clerk of the election that it was a true copy of the poll book, and identical with it, as made out at the time, as such.

. The twelfth section of the act of 1859, would, it would seem, cure this informality, for that provides that " no neglect, omission, irregularity, informality, or want of technicality on the part of any persons authorized to carry out the provisions of this act, shall inure to the loss, defeat or disadvantage of said railroad company, or other holders of the bonds of said township, nor to the defeat or delay of [on] the subscription to the capital stock of said railroad company, etc., nor for any other matter or thing done under or by virtue of this act, provided the provisions of the same shall have been substantially complied with." (Session Laws 1859, p. 529.)

Matters of substance seem to have been all that is required, and this certified copy is, substantially, a copy of the poll book of that election. The result of the election fully appears by the tally marks and count of the judges and clerks, all which are plainly set forth and certified.

Now as to the instructions given for the relator. They are as follows :

1. Whether a majority of the legal votes polled at the election in question, held at Bishop Hill, in the town of Weller, were cast in favor of subscription to the capital stock of railroad company in question, or not.

2. Whether the judges 'of said election knowingly, and with the wilful and unlawful intention of changing the result of said election, from a vote against to a vote in favor of subscription, and thus violating their duty, kept .open the polls of said election after the hour of five o'clock P. M., at the instigation and request of the duly authorized agents or servants of said railroad company.

3. The certificate of the judges and clerks of said election, of the result thereof, on the poll books of said election, is proper and complete evidence of said result, for the consideration of the jury, and to enable them to determine, in connection with the other proof, what was in fact the result of such election.

4. If the jury are satisfied, from the evidence, that a majority of the legal votes cast at said election, were cast in favor of said railroad subscription, they should render a verdict in favor of the plaintiff or relator, unless they also believe, from the evidence, that the polls of said election were corruptly kept open after the hour of five o'clock P. M. on the day of said election, wilfully and with the intent and purpose of disregarding the law and violating their duty, and that said polls were kept open at the instigation and request of said railroad company or their agents.

5. If the jury should believe, from the evidence, that the judges of said election kept the polls of said election open until after five o'clock P. M., on the day of said election, this alone will not defeat or affect the validity of said election, or establish the defendant's defense, unless the jury shall also find, from complete and satisfactory evidence, that this was done at the instigation and request of the said railroad company, or its agents duly authorized to act in the premises, and the fact that the said railroad company was interested in the result of said election, alone, is no legal evidence whatever, to establish any improper act or interference on the part of said railroad company or their agents.

6. The presumption of law is, that judges of elections, and all other officers acting under the authority of law, have done their duty and acted legally, and it is incumbent upon the party asserting the contrary, to prove satisfactorily that said judges and officers have violated their duty and disregarded the law.

7. It is the duty of the court and jury, under the provisions of the law applicable to the case, to give to the acts, conduct and certificates of the judges and clerks of the election, and all other officers acting under the authority of the provision

of the act incorporating said railroad company, and the act amendatory thereof, in reference to said election, or otherwise, a liberal construction, and to disregard every mere neglect, omission, irregularity, informality or want of technicality on the part of any person or persons authorized to carry out the provisions of said act, provided, only that they are satisfied "that the provisions of the same shall have been substan- tially complied with." And if the jury are satisfied in this case, notwithstanding the irregularities, informalities, etc., attending said election, if any exist, or pertaining to the acts and certificates of said judges and officers, that the substance of the law has been complied with, and its substantial object and purpose attained, they will find in favor, and not against the validity of said acts and proceedings.

8. It is not incumbent on the plaintiff or relator, to prove a compliance on the part of said railroad company with all the pre-requisites and conditions provided by law preliminary to said election, but only such as are denied by the defend- ant's return. And other facts stated in the petition and writ and not denied in the return, are in law to be deemed and taken as true.

9. In this case, it is necessary for the defendant to prove, to the satisfaction of the jury, that after the hour of five o'clock P. M., enough votes were cast at said election in favor of said subscription, to change the result from a vote in favor of to a vote against said subscription, in order to establish his defense.

The defendant also asked the court to instruct the jury as follows, which the court refused to do:

The burden in this case is upon the relator, to prove that the election in the town of Weller, on the 25th day of May, 1859, was a legal, valid election, by proving a substantial compliance with each and all the provisions of the act of the legislature of this State authorizing it; and unless the jury believe, from the evidence in this case, that said act was so complied with, they should find a verdict for the defendant.

Unless the relator has proved to the satisfaction of the jury, by the evidence in this case, that the town of Weller, or some

portion of it, is within four .miles of the located line of the railroad in question, they should find for the defendant.

Unless the relator has proved to the satisfaction of the jury, by the evidence in this case, that the sum of $12,800 does not exceed sixty cents per acre on the land embraced in the town of Weller, on the 25th day of May, 1859, they should find for the defendant.

Unless the relator has proved to the satisfaction of the jury, by competent evidence in the case, that previous to the alleged election, five or more of the voters of said town delivered to the town clerk thereof, or left at his place of residence, a requisition as required by the third section of the act aforesaid, they should find for the defendant. And the printed election notice attached to the poll book in evidence, is not, of itself, competent evidence of such requisition.

Unless the plaintiff has proved to the satisfaction of the jury, by competent evidence in this case, that the town clerk of said town, at least ten days before said election, gave notice of said election by posting, or causing to be posted, three notices thereof in three public places in said town, they should find a verdict for the defendant. And the printed notice referred to in the last preceding instruction, is not of itself competent evidence that such notice was so given.

Where, as in this case, the issue presents the question whether the votes cast at an election were legally cast, and consequently, whether the election was legally authorized, there is no presumption of the law that the officers of such election, or those calling the same, performed their duty.

We think the instructions asked by the defendant were properly refused, for the reason, that the matters contained in them were not in issue to the jury. The questions before them could only be the facts set up in the return to the alternative writ of mandamus, and they were, first, that the election was not conducted according to law, as alleged in the writ; second, that the polls were not closed until after five o'clock, and the charge that if the votes taken after that hour had been rejected, the election would have been against the subscription. All other facts stated in the petition of the

relator, and in the alternative writ of mandamus, are admitted, except these two facts, and they were the only facts in issue to the jury, upon which they could pass, and, consequently, the only ones to which their attention could be directed by instructions from the court. Because points are made in argument, it does not follow, the court must instruct as to them, unless those points are in issue to the jury. No points having been made to the jury to which these instructions applied, they were properly refused. The issue being the taking of votes after five o'clock, by which the result of the election was changed, shut out all inquiry whether the preliminary steps required by law to authorize the election, were taken or not, and so of all the other matters contained in the refused instructions which were alleged in the petition and alternative writ, and not denied by the return. This is a well established rule in pleading.

The plaintiff's instructions give a fair exposition of the law of the case on the facts proved. A mere irregularity in conducting an election, which deprives no legal voter of his vote, and does not change the result, never has been held to invalidate an election.

The rules prescribed by the law for conducting an election, are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory, merely—not jurisdictional or imperative. If an irregularity, of which complaint is made, is shown to have deprived no legal voter of his right, or admitted a disqualified person to vote—if it casts no uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive a benefit from it—it may well be overlooked in a case of this kind, when the only question is, which vote was the greatest, that for subscription or that against subscription.

The allegation of the defendant, that votes were cast after five o'clock, is not clearly established, and is not so found by the jury. Had it been so, it was necessary for him to show how they voted. We cannot presume one way or the other. This has not been shown, and it is impossible to say, if votes

were received after five o'clock, such votes would have changed the result, and if they did not, it would be going very far indeed, to say, such an irregularity so vitiated the election as to render it void. If necessary, the aid of the twelfth section of the act before cited might be invoked, but it is unnecessary. On general principles, no election could be made void on such grounds.

Now as to the matters growing out of the demurrer to the third branch of the defendant's return, it is sufficient to say that the agreement therein set out between certain voters of the township to " pair off," and be absent from the polls, was of no validity, nor were the judges of the election required to regard it. The voters, notwithstanding the agreement, had the right to vote, and their votes when offered could not, legally, be rejected. But if the agreement was an illegal one, the relators are not shown to have been a party to it, or under any obligation to regard it, and therefore could not be assailed. Even if they had procured a portion of those who were a party to the agreement to come to the polls and vote for the subscription, they had a clear right to do so, the agreement having no binding legal obligation. This is the *gist* of the matter set up in that branch of the return. It has no substance, and the demurrer was properly sustained to it.

Upon the remaining point made by the appellant, that the act of 1859 is unconstitutional, we consider that settled by the decisions of this court. *Johnson* v. *Stark County*, 25 Ill. 75; *Prettyman* v. *The Supervisors of Tazewell County*, 19 Ill. 406.

The law giving the supervisor no discretion in this matter, a majority having voted for the subscription, a peremptory mandamus must be awarded.

*Peremptory mandamus awarded.*