THE PEOPLE *ex rel.* Charles S. Deneen, State's Attorney,

*v.*

THE PEOPLE'S GAS LIGHT AND COKE COMPANY.

*Opinion filed October 26, 1903—Rehearing denied December 11, 1903.*

1. QUO WARRANTO—*granting leave to file information rests in sound discretion of court.* Granting leave to file an information in the nature of a *quo warranto* rests in the sound discretion of the court, and unless such discretion is abused the judgment of the court will be affirmed by a court of review.

2. SAME—*correct practice upon presentation of petition for quo warranto.* Upon presentation of a petition for leave to file an information in the nature of *quo warranto* and the appearance of the respondent, it is proper practice to hear affidavits and counter affidavits as to the facts relied upon for the leave asked.

3. SAME—*constitutionality of statute may be tested by quo warranto.* Section 1 of the Quo Warranto act is broad enough to authorize the institution of a *quo warranto* proceeding to test the legality of a statute under which the respondent corporation is alleged to be usurping power.

4. CONSTITUTIONAL LAW—*what is a compliance with provision of constitution concerning title of acts.* The general purpose of the provision of the constitution that no act shall embrace more than one subject, which shall be expressed in the title, is accomplished if the title is comprehensive enough to reasonably include, as falling within the general subject or the subordinate branches thereof, the several objects which the statute seeks to effect.

5. SAME—*act of 1897, relating to gas companies, does not violate the constitutional provision as to title.* The title of the act of 1897, being "An act in relation to gas companies," (Laws of 1897, p. 177,) is broad enough to include the authority therein given for the merger or consolidation of such companies, notwithstanding the word "merger" or "consolidation" is not used in the title.

6. SAME—*act of 1897, authorizing merger of gas companies, is not special legislation.* The act of 1897, authorizing the merger of gas companies, applies to, all gas companies doing business in the same city, and hence is not in violation of section 22 of article 4 of the constitution, prohibiting special laws granting exclusive privileges to any corporation, association or person.

7. CORPORATIONS—*right of legislature to authorize merger.* In the absence of constitutional limitation the legislature has power to authorize the merger or consolidation of private corporations organized under the laws of this State.

MAGRUDER, J., dissenting.

Writ of Error to the Circuit Court of Cook county; the Hon. Elbridge Hanecy, Judge, presiding.

Charles S. Deneen, State's Attorney, (A. C. Barnes, Adolph Moses, Clarence S. Darrow, William Thompson, and A. M. Cross, of counsel,) for plaintiff in error:

Under section 1 of the statute on quo warranto a court is not at liberty to arbitrarily refuse leave to file an information, but must exercise a sound discretion in accordance with principles of law. An abuse of this discretion is reversible error. *People v. Railway Co.* 88 Ill. 537; *People v. Waite,* 70 id. 25; *People v. Callaghan,* 83 id. 128; *People v. McFall,* 124 id. 645.

The State's attorney may receive information, evidence or suggestions from whom he pleases. If, after receiving them, he acts in good faith, as a public officer, for the investigation, by *quo warranto,* of a public question, then private malice or interest, if it exists, does not defeat the proceeding. *People v. Railway Co.* 88 Ill. 543.

The statute commonly known as the Gas Consolidation act is unconstitutional, and therefore any gas companies seeking to consolidate under it are usurping each other's franchises, and by section 1 of the Quo Warranto statute, *quo warranto* is the proper remedy to stop the transgression.

The act is unconstitutional because it contravenes section 13 of article 4 of the constitution of 1870, which provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of this act is, "An act in relation to gas companies." The whole body of the act relates to the consolidation of gas companies, and the sale or lease of its property and franchises by one to another. The subject of consolidation, which freights most of its provisions, is not expressed in the title. The absence of such reference is fatal to the act. *Bridge Co. v. Smith,* 148 N. Y. 540; *People v. Mellen,* 32 Ill. 181; *Trustees v. Gaylord,*

61 id. 276; *People* v. *Protestant Deaconesses,* 71 id. 229; *Leach* v. *People,* 122 id. 420; *Middleport* v. *Insurance Co.* 82 id. 562; *Welch* v. *Post,* 99 id. 471; *Dolese* v. *Pierce,* 124 id. 149; *Parks* v. *Modern Woodmen,* 181 id. 227; *Woodruff* v. *Coal Co.* 182 id. 480; *Manchester* v. *People,* 178 id. 285; *People* v. *Hamill,* 134 id. 666.

The act also contravenes the following provisions of the constitution: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say, for   *   *   *   granting to any corporation, association or individual, any special or exclusive privilege, immunity or franchise whatever." (Art. 4, sec. 22.) "No corporation shall be created by special laws, or its charter extended, changed or amended,   *   *   * but the General Assembly shall provide by general laws for the organization of all corporations hereafter to be created." (Art. 11, sec. 1.)

The matter of consolidation is not an incident peculiar to gas companies, as such.   One class of corporations may consolidate as readily as another, so far as the nature of their business is concerned.   An act, therefore, which gives special privileges, in the way of consolidation, to one class of corporations which it does not extend to other classes, is special legislation, and unconstitutional. *Coal Co.* v. *People,* 147 Ill. 73; *People* v. *Chicago Gas Trust Co.* 130 id. 268; *In re Day,* 181 id. 73; *Harding* v. *People,* 160 id. 465; *People* v. *Normal,* 170 id. 468; *People* v. *Martin,* 178 id. 623; *Dupee* v. *Swigert,* 127 id. 494; *Lippman* v. *People,* 175 id. 101; *Ritchie* v. *People,* 155 id. 98; *Ramsey* v. *People,* 142 id. 380; *Thomas* v. *Railroad Co.* 40 Fed. Rep. 126; *Millett* v. *People,* 117 Ill. 294; *Frorer* v. *People,* 141 id. 171; *People* v. *Knopf,* 183 id. 410; *Noel* v. *People,* 187 id. 587; *State* v. *Walsh,* 35 L. R. A. 231; *State* v. *Boyd,* 19 Nev. 45; *State* v. *Pennoyer,* 65 N. H. 116; *VanRiper* v. *Parsons,* 40 N. J. L. 5; *Stratton Claimants* v. *Morris Claimants,* 89 Tenn. 534; *Railroad Co.* v. *Morris,* 65 Ala. 193; *Woodward* v. *Brien,* 82 Tenn. 520; *Hatcher* v. *State,* 80 id. 368.

SEARS, MEAGHER & WHITNEY, (N. C. SEARS, and JAMES F. MEAGHER, of counsel,) for defendant in error:

Granting leave to file an information in the nature of *quo warranto* always rests in the sound discretion of the court. *People* v. *Railroad Co.* 88 Ill. 537; *People* v. *Waite,* 70 id. 25; *People* v. *Drainage Comrs.* 31 Ill. App. 219; *People* v. *Moore,* 73 Ill. 132; *People* v. *Callaghan,* 83 id. 128; *Martens* v. *People,* 186 id. 314; *People* v. *Keeling,* 4 Col. 129; *State* v. *Tolan,* 33 N. J. L. 195.

The court is vested with large discretion in *quo warranto* proceedings, and may grant the writ on the mere showing of the petition, without a rule *nisi,* or he may order the defendants to show cause and hear both sides by affidavit, and may refuse the writ if the affidavits of the defendants so warrant. *People* v. *Drainage District,* 193 Ill. 428.

*Quo warranto* may not be resorted to for the purpose of determining whether a law is invalid. *People* v. *Whitcomb,* 55 Ill. 172; *East St. Louis* v. *New Brighton,* 34 Ill. App. 494; *People* v. *Springfield,* 61 id. 86.

The title to the act approved June 5, 1897, entitled "An act in relation to gas companies," is not obnoxious to the requirement of section 13 of article 4 of the constitution. *Potwin* v. *Johnson,* 108 Ill. 70; *Blake* v. *People,* 109 id. 504; *Johnson* v. *People,* 83 id. 431; *People* v. *Nelson,* 133 id. 565; *People* v. *Blue Mountain Joe,* 129 id. 370; *Arms* v. *Ayer,* 192 id. 601.

Neither is the act special legislation, nor an enlargement, extension or amendment of the charter of defendant in error within the constitutional inhibitions. *People* v. *Hazelwood,* 116 Ill. 319; *Hawthorn* v. *People,* 109 id. 302; *Insurance Co.* v. *Auditor,* 101 id. 82; *Johnson* v. *Elevator Co.* 105 id. 462; *Holmes* v. *Mattoon,* 111 id. 27; *People* v. *Wright,* 70 id. 388; *People* v. *Hoffman,* 116 id. 589; *West Park Comrs.* v. *McMullen,* 134 id. 170; *Cummings* v. *Chicago,* 144 id. 563; *Potwin* v. *Johnson,* 108 id. 79; *Park* v. *Modern Woodmen,* 181 id. 214; *Arms* v. *Ayer,* 192 id. 601.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Prior to August 9, 1901, plaintiff in error presented a petition to the circuit court of Cook county for leave to file an information in the nature of *quo warranto* against defendant in error, which was on that day allowed and the information filed, but with the understanding on the part of the court and counsel for the respective parties that the respondent should have the right thereafter to ask that the order be set aside. On the 17th of the same month a motion to that effect was duly made, and after some delay, the occasion of which is unimportant, submitted to Judge Hanecy on the petition and affidavits presented *pro* and *con.* On January 25, 1902, the motion was allowed and the order of August 9 vacated, leave to file the information denied and the petition dismissed. To reverse that ruling this writ of error is prosecuted.

Counsel agree that leave to file an information in *quo warranto* rests in the sound discretion of the court, and it is admitted by plaintiff in error that this case is to be considered as though the petition had originally been presented to Judge Hanecy at the time he denied the leave to file the information. It was proper practice, upon the presentation of the petition and the appearance of the respondent, to hear affidavits and counter-affidavits as to the facts relied upon for the leave asked, and unless we can say the court below, upon a consideration of the case so presented, abused its legal discretion, the judgment must be affirmed.

The petition shows that the respondent obtained a franchise from the State of Illinois by an act of the legislature approved February 12, 1855, amended February 7, 1865, under which, by authority of an ordinance of the city of Chicago, it purchased real estate and erected gas works, etc., for the purpose of supplying gas to the city and its inhabitants, and was engaged in so doing in the month of August, 1897, when, contrary to law, in addition to its own franchise, it began to use and usurp, and

continues to use and usurp, without any legal warrant whatsoever, certain franchises and privileges, to the prejudice of the people of the State of Illinois. It then proceeds to aver the consolidation or merger of eight other gas companies furnishing light to the inhabitants of the city of Chicago with the respondent, and concludes with the averment that it "is now using and usurping the several above named franchises and privileges, and has so used the same since and after the third day of August, 1897, in said county of Cook, and still usurps and uses the same, to the great damage and prejudice of the said People of the State of Illinois and against the peace and dignity of the same."

The affidavits filed on behalf of the respondent tended to show that the object of the proceeding was to subserve the purpose of private individuals, and in resisting the leave to file the information it relied upon the well understood rule of law that *quo warranto* will not lie for the enforcement of mere private rights, but can only be resorted to for the vindication of the public interest. The counter-affidavits, though not denying many of the facts set forth in those filed on behalf of the respondent, relied mainly upon the sworn statement of the State's attorney to the effect that after a full and careful consideration of the whole matter he reached the conclusion that the act under which the defendant had consolidated with other gas companies was unconstitutional and void, and that he instituted the proceeding influenced by no other consideration than the protection of what he understood to be the public interest. Comment upon the conduct of parties who seem to have been interested in bringing about the filing of the petition is, in our view of the case, unnecessary, the affidavit of the public officer satisfactorily showing that he acted from a sense of official duty, uninfluenced by private interests or motives. (*People* v. *North Chicago Railway Co.* 88 Ill. 537; *McGahan* v. *People*, 191 id. 493.) It is not, however, clear

from the petition, when considered in the light of the
statute authorizing the consolidation and merger of gas
companies, that the public would in any way be benefited
by the judgment of ouster here sought, and it seems that
the order of the court below, denying leave to file the
information and dismissing the petition, was largely up-
on that ground. Inasmuch, however, as the petition is
based solely upon the theory that the statute "in relation
to gas companies," approved June 5, 1897, is unconstitu-
tional and void, in view of our conclusion upon that sub-
ject it will be unnecessary to consider other questions
raised in the argument. The position of counsel for de-
fendant in error that *quo warranto* cannot be resorted to
for the purpose of determining whether a law is consti-
tutional is not tenable. Section 1 of chapter 112 of our
statutes (3 Starr & Cur. Stat. p. 3180,) authorizes the
bringing of the action in cases of this kind.

The statute is entitled "An act in relation to gas com-
panies." (Hurd's Stat. 1901, p. 495.) Section 1 authorizes
gas companies organized in this State "to sell, trans-
fer and convey or lease their real and personal property,
rights, franchises and privileges, in whole or in part, to
any other gas company doing business in the same city,
town or village, and such other gas company is author-
ized to purchase or lease and to hold and enjoy said
property." The second section (the one under which the
respondent is charged with usurping the franchises of
other companies) is as follows: "It shall be lawful for
any gas companies now organized or hereafter to be
organized in this State, doing business in the same city,
town or village, to consolidate and merge into a single
corporation, which shall be one of said merging and con-
solidating corporations, by complying with the provi-
sions of this act, as hereinafter specified." Section 3
authorizes all gas companies "to manufacture and dis-
tribute gas for fuel purposes and to distribute natural
gas," etc. Sections 4, 5, 6, 7, 8, 9 and 10 pertain to the

manner of perfecting the sale or consolidation of companies, and the effect thereof.   Section 11 is:   "Any corporation purchasing or leasing the property of any company or companies, or into which any company or companies are consolidated and merged under this act, shall be, at the time of availing itself of or accepting the benefits of this act, in the actual business of furnishing gas to consumers; and shall be subject to the following provisions:   Such corporation shall not increase the price charged by it for gas of the quality furnished to consumers during any part of the year immediately preceding such purchase or lease, or such consolidation and merger.   Such corporation shall furnish gas to consumers as good in quality as it furnished previous to such purchase or lease, or such consolidation and merger."   Section 12 provides for the infliction of penalties for the violation of the preceding section, and the recovery of damages by any person injured thereby, etc.

The contention of counsel for plaintiff in error against the validity of the law is, first, it contravenes section 13 of article 4 of the constitution of 1870, and it is said: "The title of this act is 'An act in relation to gas companies.'   The whole body of the act relates to the consolidation of gas companies and the sale or lease by one of its property and franchises to another.   The subject of 'consolidation,' which freights most of its provisions, is not expressed in the title.   The absence of such reference is fatal to the act."   If by the expression, "which freights most of its provisions," it is meant that the subject of consolidation is the principal object of the statute, the assertion is unwarranted by its language and provisions.   The enactment in the first section, not questioned in the argument, is no less fully provided for in the subsequent provisions of the act than is the "consolidation and merger" authorized by the second.   The contention is, that authority for any gas companies now organized or hereafter to be organized in this State,

doing business in the same city, town or village, to con-
solidate and merge into a single corporation, which shall
be one of said merging and consolidating corporations,
is not consistent with or germane to the general subject
"in relation to gas companies."

The validity of statutes under the foregoing section
of the present constitution, and a similar one as to spe-
cial or local statutes in that of 1848, has frequently been
before us, and we have uniformly held that "the general
purpose of the provision is accomplished when the title
is comprehensive enough to reasonably include as falling
within that general subject, and as subordinate branches
thereof, the several objects which the statute assumes
to effect;" (*Potwin* v. *Johnson*, 108 Ill. 70;) that "the fact
that many things of a diverse nature are authorized or
required to be done is unimportant, provided the doing
of them may fairly be regarded as in furtherance of the
general subject of the enactment;" (*Blake* v. *People*, 109 Ill.
504;) and that "the generality of the subject embraced in
the title is no objection to it, since it is purely a matter
of legislative discretion whether the subject expressed
shall be general or specific; and it is clear that the
broader and more general the subject the greater the
number of particular or subordinate subjects which will
be embraced within it." (*People* v. *Nelson*, 133 Ill. 565.)
"If all the provisions of the act relate to one subject,
which is indicated in its title, and the parts of the act
are incident to and reasonably connected with the sub-
ject indicated and are reasonably auxiliary thereto, then
the act may include details of legislation with reference
to that subject matter so indicated without the title be-
ing a mere index of everything contained therein.    The
provision of the constitution cannot be so narrowly con-
strued as to require the title of an act, of itself, to con-
tain the entire act;" (*Park* v. *Modern Woodmen of America*,
181 Ill. 214;) or, stated in other language: "It is not to
be expected, neither is it possible, for the title of the

act to contain all the various provisions of the act itself.
* * *   If such was the case, the title to the act would
have to be as comprehensive as the act itself.   Such was
not the object or intent of the constitution."   (*Burke* v.
*Monroe County*, 77 Ill. 610.)   "Judge Cooley, in his work
on Constitutional Limitations, (172,) dealing with this
subject, says: 'The general purpose of these provisions
is accomplished when a law has but one general object,
which is fairly indicated by its title.   To require every
end and means necessary or convenient for the accom-
plishment of this general object to be provided for by a
separate act relating to that alone, would not only be
unreasonable, but would actually render legislation im-
possible.'"   (*Arms* v. *Ayer*, 192 Ill. 601.)   We again said in
*Allardt* v. *People*, 197 Ill. 501: "The framers of the consti-
tution intended by it to prevent legislation which should
not by the title clearly inform the legislature of its pur-
pose and prevent the people from being misled thereby.
'The generality of a title is therefore no objection to
it, so long as it is not made a cover to legislation incon-
gruous in itself, and which by no fair intendment can be
considered as having a necessary or proper connection,'"
citing Cooley on Const. Lim. sec. 169, *et seq.*, and *People*
v. *Institution of Protestant Deaconesses*, 71 Ill. 229.

The many cases referred to as supporting the conten-
tion of plaintiff in error, most of which are found in our
own Reports, all recognize and enforce the same con-
struction announced in the foregoing decisions.   Those
of them which hold statutes unconstitutional for a fail-
ure to conform to section 13, *supra*, of the constitution,
do so because the enactments were incongruous, not ger-
mane to the subject expressed in the title, or that the
title furnished no information to the members of the leg-
islature or the public of their purpose.   *New York and
Staten Island Bridge Co.* v. *Smith*, 148 N. Y. 540, is cited in
the brief of counsel for plaintiff in error in support of
the foregoing objection, with the comment "squarely in

point." This must have been by inadvertence. The case has no bearing whatever upon the question involved. It neither deals with nor discusses it. The only constitutional question there decided was, that parts of a statute conceded to be unconstitutional did not invalidate the whole act.

We have been unable to find any authority for the position that the consolidation and merger of gas companies authorized by section 2 are in any way inconsistent with or foreign to the title of the foregoing statute relating to gas companies, nor are we able to perceive any good reason for such a conclusion. There can be no doubt that in the absence of constitutional limitation the legislature has full power to authorize the consolidation of all private corporations organized under the laws of the State. (1 Beach on Private Corp. sec. 332.) The only restriction in our constitution upon that power is the provision found in section 11 of article 11, which prohibits railroad corporations from consolidating with any other railroad corporation owning a parallel or competing line. Many of the State constitutions contain provisions similar to section 11, *supra*, of our own, and some States have by their constitutions prohibited all combinations of corporations to prevent competition, (6 Am. & Eng. Ency. of Law,—2d ed.—p. 825,) but, as above stated, our constitution contains no such prohibition.

"The legislative power may be exercised by grant in the charters of consolidating companies, or by the provisions of a general or special act of the legislature passed prior to consolidation and after the organization of the original corporations." (1 Beach on Private Corp. sec. 334.) In section 326 of the same work the following definition of consolidation is given: "The word 'consolidation' is used to denote any conjunction or union of the stock, property or franchises of two or more corporations, whereby the conduct of their affairs is permanently or for a long period of time placed under one

management, whether the agreement between them be by lease, sale or other form of contract, and whether its effect be the dissolution of neither of the companies, or whether one of them be dissolved and its existence be merged in the corporate being of the other, or whether it result in the dissolution of both companies and the creation of a new corporation out of such portions of the original companies as enter into the new." Statutes "authorizing the consolidation of 'manufacturing' corporations have been held to include electric light companies, and also, undoubtedly, include gas companies." "Acts of several of the States also authorize the consolidation of corporations of the same nature and covering the same territory. Such an act has been held to include gas companies and water companies, organized to furnish water for the same village." (6 Am. & Eng. Ency. of Law, p. 803, and cases cited.)

The frequency with which corporations are consolidated, by sale, lease or other form of contract, and the fact that many of the States have adopted general statutes authorizing the consolidation and merger of corporations, repel the idea that such consolidation and merger are foreign to the general subject "in relation to corporations" and not reasonably included therein, or, when applied to this act, the subject "consolidation and merger" is not germane to the title "in relation to gas companies." We entertain no doubt that the enactment authorizing the consolidation of gas companies is, under the repeated decisions of this court, embraced in the title of this act, within the meaning of section 13 of article 4 of the constitution of 1870.

The second ground upon which the act is condemned is, that it violates section 22 of article 4, which prohibits the passage by the General Assembly of any local or special laws "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." Soon after the adoption of

the present constitution, in passing upon the validity of a provision in the act in force July 1, 1872, known as "the mayors' bill," we said: "The act is neither local nor special. It applies in general terms to all the cities in the State. Whether there may be many or few to whom its provisions will be of any practical force is not the question. As was observed in *McAunich* v. *M. & M. R. R. Co.* 20 Iowa, 338: 'These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the laws. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of those within the scope of their operation.'" (*People* v. *Wright*, 70 Ill. 388.) To the same effect is *Potwin* v. *Johnson, supra.* In *Hawthorn* v. *People*, 109 Ill. 302, the validity of the act of June 18, 1883, in relation to butter and cheese factories, was challenged, for the reason, among others, that it was special or class legislation, but we again said (p. 311): "We fail to perceive that this is not a general law. It embraces all persons in the State similarly engaged. If all laws were held unconstitutional because they did not embrace all persons, few would stand the test. * * * A law is general, not because it embraces all of the governed, but that it may, from its terms, when many are embraced in its provisions, and all others may be when they occupy the position of those who are embraced." (See, also, *People* v. *Hazelwood*, 116 Ill. 319; *Cummings* v. *City of Chicago*, 144 id. 563; *Park* v. *Modern Woodmen of America, supra*.) The act under consideration applies to all gas companies organized or to be organized in this State, doing business in the same city, etc., and is therefore in no proper sense special or local legislation.

Again, it is said the respondent, "as a result of the act in question, would acquire to itself the franchise of eight

other corporations organized under general laws. The company's charter would thus be extended or amended so as to confer upon said company the right to merge with other gas companies or the right of having them merged into itself, and this not by general law relating to all corporations, but by this special law relating only to gas companies. This distinctly contravenes section 1 of article 11, that 'no corporation shall be created by special laws, or its charter extended, changed or amended, * * * but the General Assembly shall provide, by general laws, for the organization of all corporations hereafter to be created.'" The entire argument in support of this proposition rests upon the assertion that "as a result of this act the respondent would acquire to itself the franchise of eight other corporations organized under general laws." If the proposition was otherwise sound, it cannot be sustained under the facts of this case. The petition fails to show in what way or manner the respondent is exercising any of the rights or privileges granted to either of the other companies, or that it is using other rights and privileges than those authorized by its own charter. Although the general rule is that the consolidation of several corporations into a new one invests the latter with all the rights and privileges of the several constituent companies, such is not the result of consolidation or merger under this statute. Section 2 expressly provides that the consolidation and merger into a single corporation must be into one of the merging and consolidating corporations, which by section 11 shall be, at the time of availing itself of or accepting the benefits of the act, in the actual business of furnishing gas to consumers. By the last clause of section 8 it is provided: "The companies, parties to the agreement or agreements, which provide for consolidation and merger, shall thereupon be and are hereby declared to be consolidated and merged into the one corporation specified in such agreement or agreements." While section 9 makes the consoli-

dated corporation subject to, and requires it to perform for each of the companies so entering into said agreement or agreements, the legal obligations resting upon each of them, respectively, under their respective charters and ordinances, in the same manner and to the same extent as if the companies had remained individual and distinct, it does not confer upon it any enlarged powers or privileges. Moreover, there is nothing whatever in the petition to show that the rights, privileges and franchises of any or either of the consolidated or merged companies are larger or in any way different from those of the respondent.

We are of the opinion that none of the objections urged to the constitutionality of the statute can be sustained. It is scarcely necessary in this case to call attention to or place reliance upon the well understood rule that every presumption must be indulged in favor of the validity of enactments by the legislative branch of the government, and that statutes will only be held unconstitutional and void after resolving every reasonable doubt in favor of their validity. It is said: "If this act is sustained, its necessary and only possible operation will be to promote and create a monopoly. The attempted consolidation under it has resulted in a gas trust." If a monopoly has been created or a gas trust formed by the consolidation of the defendant in error with the other corporations named in the petition, it does not so appear in this proceeding; nor are we able to see how such a result can follow in view of the requirements of section 11 of the act and the penalties imposed by section 12. Whether the city council of the city of Chicago has power to regulate the price which the respondent company may charge for gas furnished to it and its inhabitants or not, there is nothing in this case to show that extortion is being practiced or a monopoly created by it. It will be time enough to meet those questions when a case is presented involving them.

There was no abuse of legal discretion in denying the leave to file the information and dismissing the petition. The judgment of the circuit court will accordingly be affirmed.                                    *Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.