**The People of the State of Illinois, Plaintiff in Error, v. Rose D. Rittman, Defendant in Error.**

### Gen. No. 15,386.

QUO WARRANTO—*when lies.* *Quo warranto* lies to test the right to hold the office of president of a fraternal insurance corporation upon allegations of non-observance of the by-laws of the society and the use of undue influence, etc., in effecting the alleged election of the incumbent of such office.

*Quo warranto.* Error to the Superior Court of Cook county; the Hon. Willard M. McEwen, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded. Opinion filed May 3, 1910. Rehearing denied and modified opinion filed May 17, 1910.

John E. W. Wayman, for plaintiff in error; Francis A. McDonnell and Frank L. Fowler, of counsel.

Edward Osgood Brown and I. T. Greenacre, for defendant in error.

Mr. Justice Smith delivered the opinion of the court.

By this writ of error a judgment of the Superior Court is brought before us dismissing a petition filed by the plaintiff in error for leave to file an information in the nature of a *quo warranto* to test the right of defendant in error, Rose D. Rittman, to the office of president (High Chief Ranger) of the Woman's Catholic Order of Foresters, a fraternal insurance corporation of Illinois.

The membership of the order is confined to women of the Catholic faith, enrolled in membership in local lodges or courts controlled by a constitution and by-laws, and subject to the jurisdiction of a supreme body called a High Court.

The contestant, Elizabeth Rodgers, in whose behalf the petition was filed, was the organizer of the order, and had been its High Chief Ranger or President for its entire existence. She was a candidate for re-election at the annual convention of delegates which met in Detroit, Michigan, in October, 1908. Mrs. Rose D. Rittman, defendant in error, had been Vice Chief Ranger four years, and was the only opposition candidate. At the election eight hundred valid ballots were cast, of which Mrs. Rittman received four hundred and one and Mrs. Rodgers three hundred and ninety-nine.

The petition alleges that the election of Mrs. Rittman was invalid because of fraud and intimidation

therein as the result of a conspiracy between members and persons not members, and sets out in great detail acts done outside of the convention and in the convention which, if proven, were of a character tending to establish a fraudulent conspiracy to libel, slander and defame the character of Mrs. Rodgers, and, what is of more serious legal importance, that in connection therewith an undue and illegal spiritual influence was exerted upon the members of the convention by persons possessing spiritual authority in the Catholic Church, not members of the order or of the convention, which was calculated to influence directly the result of the election and to destroy freedom in the election by threats to withhold the sacraments of the church and expose the delegates who should vote for Mrs. Rodgers to other religious penalties.   The petition also alleges a violation of the constitution of the order which provides: ''When marking the ballot each delegate shall be entitled to privacy, and her freedom of choice shall not be in any way restricted.''   Attached to the petition as exhibits and made a part of it are a number of affidavits which tend to support the allegations of the petition.   Counter affidavits of the defendant in error were also filed and read on the hearing of the petition.

We do not deem it necessary at this time to set out the averments of the voluminous petition, or to discuss in detail all the questions of law raised.   A brief statement of our conclusions is sufficient.   The question now presented by the record before us is whether the Superior Court erred in its legal discretion in refusing leave to file the information and in dismissing the petition.   The People ex rel. v. People's Gas Light Co., 205 Ill. 482.   ''Leave on the one hand, is not granted as a matter of right upon the part of the relator; and on the other hand, a court is not at liberty to arbitrarily refuse, but must exercise a sound discretion in accordance with principles of law.''   People ex rel. v. Town of Thornton, 186 Ill. 168; Paul v. People, 82 Ill. 82.

The statute of Illinois under which the Woman's

Catholic Order of Foresters was organized provides: "Each society shall have a lodge system, with ritualistic form of work and representative form of government," etc. Sec. 258, Chap. 73, Hurd's Revised Statutes. And section 267 of the same chapter provides: "Any such society organized under the laws of this State may provide for the meeting of its legislative or governing body in any other State, province or territory, wherein such societies shall have subordinate bodies, and all business that has heretofore or may hereafter be transacted at such meetings shall be valid in all respects, as if such meeting was held in this State," etc.

Section 1 of Article 11 of the Biennial Session & High Court By-laws provides: "Nominations and election of officers shall take place after reports of the High Court officers and reports of the Committee on Constitution and Finance have been read and acted upon." The section then provides the method of conducting elections and declares: "When marking the ballot, each delegate shall be entitled to privacy, and her freedom of choice shall not be, in any way, restricted."

It is clear, we think, that the statute of this state under which the election in question was authorized and held and the by-laws contemplate a representative form of government for such societies, and elections thereunder wherein the freedom of choice of the delegate voting shall be secured, and "shall not be, in any way, restricted." The rights thus secured to the members of the society by the statute and by the constitution and by-laws of the order under the statute are as high, at least, and as important as the rights of contract, and should be as strictly guarded and protected, as are the rights of contract (Doremus v. Hennessy, 62 Ill. App. 391; Van Horn v. Van Horn, 52 N. J. Law, 284; Mogul Steamship Co. v. McGregor *et al.*, L. R. 21 Q. B. 544; Doremus v. Hennessy, 176 Ill. 608; London Guarantee & Accident Co. v. Horn, 206 Ill. 493; Moran

v. Dumphy, 177 Mass. 485), and courts should see, in the exercise of a sound legal discretion, that such rights are fully protected and that fraudulent combinations and unlawful influences calculated to subvert such rights are not rewarded by ultimate success.

We are of the opinion that the allegations of the petition are sufficient to require the court to grant leave to the petitioner to file an information in the nature of a *quo warranto* against the defendant in error, and that the Superior Court erred in refusing the leave and dismissing the petition.

"The right to vote necessarily includes the right to vote as one chooses, free and untrammeled. And the genius of our free institutions demands that the mind as well as the body shall be free to exercise the elective franchise, free and untrammeled, without fear of bodily harm, social ostracism, or of religious wrath; and if any of the practices be exercised upon the body of the voters to any great extent, the purity of election is marred and election freedom destroyed; and if it be so general as to affect the result, or that from it the real result cannot be ascertained from the returns, the election is void." Richardson v. Rainey, 1 Ellsw. El. Cases, 233; Duffy v. Mason, 1 Ellsw. El. Cases, 361. See also Payne on Elections, sec. 467, p. 391; McCrary on Elections, sec. 550, p. 407; secs. 582, 582a and 569; State v. Burnham, 15 N. H. 396; Piatt v. People, 29 Ill. 54; Attorney General v. Stillson, 108 Mich. 419; Cunningham on Elections, pp. 202, 203, 204; Trench v. Nolan, 6 Irish Reports, C. L. 464.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*